UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| CRISTIAN ARIEL DISCUA BAQUEDANO, | ) | |
| Petitioner, | ) | |
| v. | ) | Case No. 1:26-cv-00178-SRC |
| ANDREW JOHNSON, | ) | |
| Respondent. | ) | |

**Memorandum and Order**

Petitioner Cristian Ariel Discua Baquedano, a federal immigration detainee, petitioned the Court for a writ of habeas corpus under 28 U.S.C. § 2241, seeking either immediate release or a bond hearing. He contends that he is not subject to the mandatory-detention regime of the Immigration and Nationality Act's section 1225. He also argues that his arrest was unlawful and his detention lacks adequate procedures required by due process. Because the United States' interpretation of the Immigration and Nationality Act is correct, and because his constitutional claims fail, Discua Baquedano has not demonstrated entitlement to release or a bond hearing. The Court therefore denies his petition.

## I. Background

Discua Baquedano (variously spelled Discua-Vacedano and Disqua Vacedano in the record, *see* doc. 1 at 116, 118, 123; doc. 7-1 at 1–4, but spelled Discua Baquedano on Petitioner's Honduran documents) is a native and citizen of the Republic of Honduras who "entered the United States without inspection on or about May 28, 2014, as an Unaccompanied Minor" at age 13. Doc. 1 at ¶¶ 36–37; *see also id.* at 113, 114 (The Court cites to page numbers as assigned by CM/ECF.). The Department of Justice had begun removal proceedings against

Discua Baquedano, but in 2023 an immigration judge administratively closed them. *Id.* at ¶ 41; *see also id.* at 121. In June 2026, Immigration and Customs Enforcement ("ICE"), following a Form I-200 administrative warrant, sought to arrest Discua Baquedano at an address in St. Louis. Doc. 7-1 at 1, 3. After determining that a car registered to him left that address, ICE "conducted a traffic stop immediately." *Id.* at 3. ICE identified the car's driver as Discua Baquedano, and he "stated that he is not a citizen or national of the United States." Doc. 7-1 at 3; *see* doc. 7 at 12. After confirming his identity, ICE arrested and detained him. Doc. 2-1 at 2; doc. 7-1 at 3. ICE then delivered him to be held at the Ste. Genevieve County Detention Center, where he is currently detained, as he awaits removal proceedings. Doc. 1 at ¶ 42. The United States premises Discua Baquedano's detention on section 1225 of the Immigration and Nationality Act. *Id.* at ¶ 44 (citing 8 U.S.C. § 1225(b)(2)(A)).

On July 22, 2026, Discua Baquedano petitioned this Court for a writ of habeas corpus seeking immediate release or a bond hearing. Doc. 1 at 23. He makes three arguments in support: (1) 8 U.S.C. § 1226 applies to him here, so the United States misapplied section 1225's mandatory detention provision; (2) his detention without a bond hearing violates his due process rights under the Fifth Amendment of the United States Constitution; and (3) ICE's warrantless arrest of him violated the Fourth Amendment of the United States Constitution. *Id.* at ¶¶ 92–107.

The next day, Discua Baquedano filed a motion asking the Court to issue a show-cause order as to why the habeas petition should not be granted. Docs. 2, 3. The Court issued the requested order and set a briefing schedule for that issue. Doc. 4. The United States timely filed its response, doc. 7, and Discua Baquedano failed to reply, *see* doc. 4, rendering his petition, doc. 1, ripe for the Court's review.

## II. Standard

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). And federal courts' jurisdiction over habeas proceedings extends to challenges to immigration-related detentions. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A writ of habeas corpus is available where a detainee shows that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention."). If "it appears from the application that the . . . person detained is not entitled" to the writ, the Court will not award habeas relief. 28 U.S.C. § 2243.

When reviewing an application for a writ of habeas corpus, courts may consider documentary evidence. 28 U.S.C. § 2247. Additionally, courts must accept as true any uncontroverted facts in the United States' response to the petition or the court's show-cause order. 28 U.S.C. § 2248. A habeas petitioner has "the burden of sustaining his allegations by a preponderance of evidence." *Walker v. Johnston*, 312 U.S. 275, 286 (1941); *accord Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1143 (D. Minn. 2025) (collecting cases discussing section 2241's burden of proof and applying to immigrant-detention context).

## III. Discussion

### A. Application of section 1225

As Discua Baquedano acknowledges, the Eighth Circuit has rejected his interpretation of the Immigration and Nationality Act's section 1225. *See* doc. 1 at ¶¶ 54–55 ("Petitioner is aware of the Eight [sic] Circuit's decision in *Avila* . . . The Eight [sic] Circuit's decision . . . is erroneously decided."). Section 1225 mandates that for "an alien who is an applicant for

admission," if the "alien seeking admission" isn't clearly entitled to it, he "*shall be* detained for a proceeding." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). Section 1225 defines an "applicant for admission" as "[a]n alien present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). By contrast, section 1226 states that "[o]n a warrant issued by the Attorney General, an alien *may be* arrested and detained pending" a removal decision. 8 U.S.C. § 1226(a) (emphasis added). As a matter of statutory interpretation, "seeking admission" is not "an independent requirement" because "the similar meanings of 'applicant for admission' and 'seeking admission' demonstrate they are equivalent." *Avila v. Bondi*, 170 F.4th 1128, 1134 (8th Cir. 2026).

Discua Baquedano asserts that the Eighth Circuit erred when it equated "applicant for admission" and "seeking admission" in section 1225, so mandatory detention was improper here because he was not "seeking admission." Doc. 1 at ¶¶ 54, 95, 99. Instead, Discua Baquedano argues, he is subject to discretionary detention under section 1226 and its attendant requirements. *Id.* at ¶ 99.

"[A] [d]istrict [c]ourt, however, is bound . . . to apply the precedent of this Circuit," notwithstanding the virtues or vices of *Avila*'s reasoning. *Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003). The Supreme Court will soon consider whether that reasoning is correct. *See Rhoney v. Barbosa da Cunha*, No. 26-104 (U.S. filed July 23, 2026), *cert. granted*, 2026 WL 2942994 (U.S. Oct. 1, 2026). In the meantime, *Avila* remains the law in this circuit.

The Court therefore adheres to *Avila*'s reasoning. Discua Baquedano was never "admitted" to the United States, so he is an "applicant for admission." *See* doc. 1 at ¶¶ 37, 97; doc. 2-1 at 2; doc. 7 at 6–7 (citing 8 U.S.C. § 1101(a)(13)(A) (defining admission as "lawful entry of the alien into the United States after inspection and authorization")). Under *Avila*, that

means section 1225—and its mandatory detention regime—applies to him. *Avila*, 170 F.4th at 1134. Because vertical precedent forecloses Discua Baquedano's argument, the Court finds that Discua Baquedano's mandatory detention under section 1225 is proper. *See* 8 U.S.C. § 1225(b)(2)(A).

**B. Fifth Amendment claim**

Discua Baquedano claims that his detention without a bond hearing violates his Fifth Amendment substantive and procedural due process rights. *See* doc. 1 at ¶¶ 85–91, 101–05. The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Due process protections apply to "aliens whose presence in this country is unlawful." *Plyler v. Doe*, 457 U.S. 202, 210 (1982); *see Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence is lawful [or] unlawful.").

The petition is ambiguous as to whether Discua Baquedano raises a substantive-due-process claim. *See generally* doc. 1. The petition states Discua Baquedano's "claim is a procedural due process claim," doc. 1 at ¶ 88, but continues that mandatory detention "substantively violates [Discua Baquedano's] right to liberty" and involves a "fundamental liberty interest," *id.* at ¶¶ 87–88. It also asserts that detained aliens "are entitled 'at least at some point' to an individualized determination in the form of a bond hearing." *Id.* at ¶ 91. While the Court "will not consider issues or grounds for relief that were not alleged in a [detainee]'s habeas petition[,]" *Frey v. Schuetzle*, 78 F.3d 359, 361 (8th Cir. 1996), the Court construes the petition as including a substantive-due-process claim. Even considering Discua Baquedano's purported substantive-due-process claim on the merits, it does not succeed.

### 1. Substantive due process doesn't entitle Discua Baquedano to an individualized hearing.

Substantive due process doesn't require an individualized bond hearing in the section-1225-detention context. Substantive-due-process analysis of an unenumerated right "insists on a 'careful description of the asserted fundamental liberty interest.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)). To determine if an interest is a fundamental right, and thus entitled to greater protection, the court must inquire whether the interest is "deeply rooted in this Nation's history and tradition." *Glucksberg*, 521 U.S. at 720–21.

And the "longstanding view" in this country's tradition remains that "the [g]overnment may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Banyee v. Garland*, 115 F.4th 928, 931 (8th Cir. 2024) (quoting *Demore v. Kim*, 538 U.S. 510, 526 (2003)); *see Wong Wing v. United States*, 163 U.S. 228, 235 (1896) ("Proceedings to exclude or expel would be vain if those accused could not be held in custody . . . while arrangements were being made for their deportation."); *Fong Yue Ting v. United States*, 149 U.S. 698, 728 (1893) ("[C]ongress, under the power to exclude or expel aliens, might have directed any . . . [unlawful alien] to be removed out of the country [by] executive officers, without judicial trial or examination.").

Neither of Discua Baquedano's interests warrant substantive-due-process protection here. To the extent that Discua Baquedano seeks immediate release, preremoval detention doesn't offend due process. *See Banyee*, 115 F.4th at 931. And Discua Baquedano's asserted liberty interest, when properly defined, is not "deeply rooted in . . . history and tradition." *Glucksberg*, 521 U.S. at 721. The petition raises a "fundamental liberty interest to be free from imprisonment," but stated carefully, the petition asserts an interest in "an individualized

determination in the form of a [preremoval] bond hearing." Doc. 1 at ¶¶ 88, 91, 104. Yet Discua Baquedano didn't raise any historical-traditional grounding for his asserted right to a preremoval bond hearing. *See generally* doc. 1. And over 130 years of history and tradition weigh against such a right's existence. *See Wong Wing*, 163 U.S. at 235; *Fong Yue Ting*, 149 U.S. at 728. "Because [Discua Baquedano] cannot clear the second step of *Glucksberg*'s test," the Court cannot deem that an individualized preremoval bond hearing is a fundamental right. *Muñoz*, 602 U.S. at 911. And absent a fundamental right, his substantive-due-process claim fails.

### 2. Procedural due process doesn't mandate that Discua Baquedano receive an individualized bond hearing.

Nor does procedural due process guarantee Discua Baquedano a preremoval bond hearing. "Procedural due process imposes constraints on government decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). And the United States cannot deprive anyone of life, liberty, or property "except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).

Still, "[i]n the exercise of its broad power over . . . immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 521 (quoting *Mathews v. Diaz*, 426 U.S. 67, 79–80 (1976)). This constitutional "sovereign prerogative" confers on the executive branch "the power to set the procedures to be followed in determining whether an alien should be admitted." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020). In the immigration context, the "bright-line rule" permits the United States to "detain an alien for as long as deportation proceedings are still 'pending.'" *Banyee*, 115 F.4th at 933. In fact, the United States may detain an alien even without individualized findings of dangerousness or flight risk. *Demore*, 538 U.S. at 524–25 (citing *Carlson v. Landon*, 342 U.S.

524, 541–43 (1952) (permitting United States' detention of Communist aliens pending removal proceedings even without an individual determination that they were dangerous or a flight risk)). The constitutional baseline prohibits "indefinite" and "potentially permanent" detention. *Demore*, 538 U.S. at 528 (quoting *Zadvydas*, 533 U.S. at 690–91).

Discua Baquedano's detention without a bond hearing doesn't violate due process. True, detention without a bond hearing limits the process afforded to Discua Baquedano to the removal proceeding only. But within the realm of immigration, the "bright-line rule" dictates that the United States may permissibly "detain an alien for as long as deportation proceedings are still 'pending.'" *Banyee*, 115 F.4th at 933. And deportation proceedings are still pending against Discua Baquedano. *See* doc. 7-1 at 1, 3. Thus, preremoval detention without a bond hearing does not per se offend the Due Process Clause.

Discua Baquedano argues that, because section 1225 doesn't provide "a categorical justification for [mandatory] detention," he is entitled to "a bond [] hearing to determine whether he is a flight risk or danger to others." Doc. 1 at ¶¶ 91, 104. In support, he cites a Fifth Circuit case, *Rodriguez v. Ortega*, which held that the United States "may detain aliens under Section 1225(b)(2)(A) for ninety days but no longer without a bond hearing." 180 F.4th 702, 727–28 (5th Cir. 2026). This argument exhibits two major flaws.

First, it presumes that flight risk and dangerousness are facts consequential to section 1225's mandatory-detention regime. They are not. *See generally* 8 U.S.C. § 1225. And a party is not entitled to a hearing where "the fact that [a party] seeks to prove" through the requested hearing "is of no consequence under" the statute at issue. *Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7 (2003). Again, the Constitution doesn't require a showing of dangerousness or flight risk to detain a deportable alien pending removal proceedings. *See*

*Carlson*, 342 U.S. at 541–43. Section 1225 concerns only whether an alien is an applicant for admission, and Discua Baquedano may freely dispute whether he is one at his removal proceeding. *See* 8 U.S.C. § 1225(b)(2)(A); 8 U.S.C. § 1229a(b)(4)(B). Neither the Constitution nor the Immigration and Nationality Act require hearings to consider evidence "of no consequence" to the relevant statute. *Doe*, 538 U.S. at 7.

Second, *Rodriguez* is not binding law in this, or indeed any, circuit. At best, *Rodriguez* would be persuasive authority, except that the Fifth Circuit granted rehearing en banc and vacated that opinion. *Rodriguez v. Ortega*, 181 F.4th 608, 609 (5th Cir. 2026). Decisions of circuit courts other than the Eighth Circuit Court of Appeals "provide persuasive authority only." *Iverson v. United States*, 973 F.3d 843, 847 (8th Cir. 2020). Instead, this Court is "bound . . . to apply the precedent of this Circuit." *Hood*, 342 F.3d at 864. What's more, binding precedent states that the Supreme Court "ha[s] already done whatever [interest] balancing is necessary" to determine whether removal proceedings afford due process. *Banyee*, 115 F.4th at 933. As explained, section 1225 affords constitutionally sufficient process, as *Banyee* dictates. *Id.* Though the Eighth Circuit will address whether the Fifth Amendment necessitates a preremoval bond hearing, controlling law indicates otherwise. *See Lugo-Solet v. Mullin*, No. 26-2052 (8th Cir. filed May 28, 2026); *see also Banyee*, 115 F.4th at 933. This Court must follow Eighth Circuit precedent.

Because section 1225's mandatory-detention regime comports with due-process requirements, the Court turns to Discua Baquedano's final claim: unlawful seizure under the Fourth Amendment.

### C. Fourth Amendment claim

A habeas petition isn't the proper avenue to challenge the lawfulness of an arrest, so an unlawful arrest cannot justify the relief Discua Baquedano seeks. The Fourth Amendment protects persons "against unreasonable searches and seizures." U.S. Const. amend. IV. Its safeguards "appl[y] to arrests of illegal aliens." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010). Though the Fourth Amendment generally requires a warrant, "a warrantless arrest satisfies the Constitution so long as the officer has probable cause to believe that the suspect has committed or is committing an offense." *Virginia v. Moore*, 553 U.S. 164, 173 (2008).

"The judicially created remedy for a Fourth Amendment violation is the exclusion of evidence." *United States v. Vanhorn*, 296 F.3d 713, 717 (8th Cir. 2002). By contrast, because "habeas is at its core a remedy for unlawful executive detention," its "typical remedy . . . is, of course, release." *Munaf*, 553 U.S. at 693. After all, a habeas writ may issue if a detainee is currently "in custody in violation of the [federal] Constitution or laws," rather than if the detainee was seized unlawfully. 28 U.S.C. § 2241(c)(3).

But a detainee "is not to be discharged for defects in the original arrest." *U.S. ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923) (holding that alien's warrantless arrest, which lacked probable cause, could not justify habeas relief of release because detention was legal); *see Mahler v. Eby*, 264 U.S. 32, 43 (1924) (describing *Bilokumsky*'s holding). As a detainee's "body . . . is never itself suppressible as a fruit of an unlawful arrest," applying the exclusionary rule in the preremoval-detention context makes little sense. *Immigr. & Naturalization Serv. v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984); *cf. Lopez-Fernandez v. Holder*, 735 F.3d 1043,

1046 (8th Cir. 2013) ("The exclusionary rule generally does not apply in civil deportation proceedings when there is a [standalone] Fourth Amendment violation.").

The Court need not consider whether Discua Baquedano's arrest violated the Fourth Amendment because his claim and requested relief don't align. Discua Baquedano asks for either immediate release or a bond hearing as a remedy for an arrest allegedly lacking probable cause or a warrant. *See* doc. 1 at ¶ 107; *id.* at 23. But the proper remedy for a Fourth-Amendment violation would be to apply the exclusionary rule. *See Vanhorn*, 296 F.3d at 717.

The exclusionary rule doesn't apply here. An unlawful arrest doesn't necessitate that the detention is unlawful. *Bilokumsky*, 263 U.S. at 158; *cf.* 28 U.S.C. § 2241(c)(3). And section 1225 supplies a lawful reason to detain Discua Baquedano, as discussed above at III.A. So habeas relief isn't available to him. *See* 28 U.S.C. § 2241(c)(3). Even if it were, because a detainee's "body is never itself suppressible," release is not the proper remedy. *Lopez-Mendoza*, 468 U.S. at 1039; *see Bilokumsky*, 263 U.S. at 158. And to the extent that Discua Baquedano requests a hearing in which to apply the exclusionary rule, he still has an opportunity to be heard at his removal proceeding. *See* 8 U.S.C. § 1229a(b)(4)(B). The applicability of the exclusionary rule within that proceeding is, however, doubtful. *See Lopez-Fernandez*, 735 F.3d at 1046.

Even presuming that release was a proper form of habeas relief for an alleged Fourth Amendment violation, probable cause supported Discua Baquedano's arrest. Seeking to execute a Form I-200 administrative arrest warrant, ICE stopped a vehicle registered to Discua Baquedano. *See* doc. 7-1 at 1, 3. The car's registration in the name of a removable alien with an outstanding administrative warrant gave "more than reasonable suspicion to initiate the stop." *Kansas v. Glover*, 589 U.S. 376, 381 (2020) (finding vehicle's registration information and

officer's inference that the driver was likely the vehicle's owner gave reasonable suspicion for traffic stop). And once ICE: (1) confirmed Discua Baquedano's identity; (2) knew that he was subject to deportation; and (3) determined that he was "likely to escape before a warrant [could] be obtained for his arrest," ICE "had probable cause to make a warrantless 'administrative' arrest for deportation proceedings." *Quintana*, 623 F.3d at 1240–41; *see United States v. Puebla-Zamora*, 996 F.3d 535, 538 (8th Cir. 2021) (authorizing warrantless arrest where an ICE agent "has reason to believe that the alien so arrested is in the United States in violation of [law] . . . and is likely to escape before a warrant can be obtained"); 8 U.S.C. § 1357(a)(2). Because ICE had probable cause to arrest Discua Baquedano, ICE's arrest of him didn't violate the Fourth Amendment.

## IV. Conclusion

The Court finds that Discua Baquedano is not entitled to habeas relief on his statutory or constitutional claims. Accordingly, the Court denies Discua Baquedano's [1] Petition for Writ of Habeas Corpus. The Court also directs that the Clerk of Court substitute Gary Stolzer, Warden of Ste. Genevieve County Detention Center, as the respondent in this matter and modify the case caption accordingly. A separate order of dismissal accompanies this Memorandum and Order.

So ordered this 19th day of October 2026.

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE